## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL<br><br>Judge Allison D. Burroughs |
| This Document Relates To:<br>C.A. No. 1:23-cv-12993-ADB<br><br>MICHAEL EVANGELISTA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>NATIONAL STUDENT CLEARINGHOUSE and PROGRESS SOFTWARE CORPORATION,<br><br>        Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD <u>FOR THE SETTLEMENT CLASS REPRESENTATIVE</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

    I.    Factual Background ................................................................................2

    II.    Summary of Class Counsel's Work ......................................................3

    III.    Mediation and Subsequent Negotiations .............................................4

ARGUMENT ..........................................................................................................5

    I.    Approving an Award of 25% of the Settlement Fund Is Reasonable
        and Appropriate.....................................................................................5

    II.    Class Counsel's Undertaking, Effort, Expertise, Investment,
        and Result Merit a 25% Award Here .....................................................8

        A.    The Size and Nature of the Fund Created and the Number
            of Persons Benefitted ...............................................................8

        B.    The Risks of Litigation Support the Requested Fee .................10

        C.    The Complexity of this Litigation Supports the Requested Fee...............11

        D.    The Experience, Skill, and Efficiency of the Attorneys
            Involved Supports the Request. ................................................12

        E.    The Request is Reasonable When Compared to Awards
            in Similar Cases .......................................................................12

        F.    Public Policy Considerations Support the Requested Fee. ........13

    III.    Settlement Class Counsel's Request for Reimbursement of Expenses
         Is Reasonable .........................................................................................14

    IV.    The Service Award Requested Is Reasonable .........................................14

CONCLUSION.......................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................... 5

*Carlson v. Target Enter., Inc.*,
  447 F. Supp. 3d 1 (D. Mass. 2020) ........................................................................ 14

*Cheryl Gaston v. FabFitFun, Inc.*,
  2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) .......................................................... 15

*Feldman v. Star Trib. Media Co. LLC*,
  2024 WL 3026556 (D. Minn. June 17, 2024) ......................................................... 15

*Fox v. Iowa Health Sys.*,
  2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ........................................................... 11

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ....................................................................................... 8

*Gordan v. Massachusetts Mut. Life Ins. Co.*,
  2016 WL 11272044 (D. Mass. Nov. 3, 2016) ........................................................... 6

*Harbour v. California Health & Wellness Plan*,
  2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ............................................................. 9

*Hill v. State St. Corp.*,
  2015 WL 127728 (D. Mass. Jan. 8, 2015) .............................................................. 14

*In re Asacol Antitrust Litig.*,
  2017 WL 11475275 (D. Mass Dec. 7, 2017) ............................................................ 6

*In re Cabletron Sys., Inc. Sec. Litig.*,
  239 F.R.D. 30 (D.N.H. 2006) .................................................................................... 6

*In re Cap. One Consumer Data Sec. Breach Litig.*,
  2022 WL 17176495 (E.D. Va. Nov. 17, 2022) .......................................................... 7

*In re Cap. One Consumer Data Sec. Breach Litig.*,
  2022 WL 18107626 (E.D. Va. Sept. 13, 2022) .......................................................... 9

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003) ................................................................................. 11

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990) ........................................................................... 15

*In re Forefront Data Breach Litig.*,
   2023 WL 6215366 (E.D. Wis. Mar. 22, 2023)................................................................. 7, 9

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
   2025 WL 457896 (S.D. Fla. Feb. 11, 2025) ................................................................. 7, 8

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   2016 WL 11299474 (N.D. Ga. Aug. 23, 2016)................................................................. 7

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ................................................................. 10

*In re Lincare Holdings Inc. Data Breach Litig.*,
   2024 WL 3104286 (M.D. Fla. June 24, 2024)................................................................. 8

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 572 (N.D. Cal. 2015)................................................................. 15

*In re Lupron Mktg. & Sales Practices Litig.*,
   2005 WL 2006833 (D. Mass. Aug. 17, 2005)................................................................. 8, 10, 15

*In re MOVEit Customer Data Sec. Breach Litig.*,
   MDL No. 3083 (D. Mass. Apr. 3, 2025) ................................................................. 7

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
   58 F. Supp. 3d 167 (D. Mass. 2014) ................................................................. 8

*In re Novant Health, Inc.*,
   2024 WL 3028443 (M.D.N.C. June 17, 2024) ................................................................. 7

*In re Puerto Rican Cabotage Antitrust Litig.*,
   815 F. Supp. 2d 448 (D.P.R. 2011) ................................................................. 13, 15

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   630 F. Supp. 3d 241 (D. Mass. 2022) ................................................................. 5, 6

*In re Solodyn Antitrust Litig.*,
   2018 WL 7075881 (D. Mass. July 18, 2018)................................................................. 6

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ................................................................. 10

*In re Sovos Compliance Data Sec. Incident Litig.*,
   No.1:23-CV-12100-AK (D. Mass. July 23, 2024) ................................................................. 6

*In re Thirteen Appeals Arising Out of San Juan*,
   56 F.3d 295 (1st Cir. 1995)................................................................. 5, 6

*In re Wilmington Tr. Sec. Litig.*,
   2018 WL 6046452 (D. Del. Nov. 19, 2018) ................................................................ 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2020 WL 4212811 (N.D. Cal. July 22, 2020)........................................................ 10, 11

*Kondash v. Citizens Bank, Nat'l Ass'n*,
   2020 WL 7641785 (D.R.I. Dec. 23, 2020) ................................................................... 6

*Mazola v. May Dep't Stores Co.*,
   1999 WL 1261312 (D. Mass. Jan. 27, 1999)............................................................... 13

**Rules**

Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 12

Fed. R. Civ. P. 23(g).......................................................................................................... 12

Fed. R. Civ. P. 23(h)........................................................................................................ 1, 5

**Other Authorities**

Manual for Complex Litigation, § 21.62 (4th ed. 2004).................................................. 15

## INTRODUCTION

This multi-district litigation ("MDL") arises from a nationwide security incident in which cybercriminals exploited an alleged vulnerability in Progress Software Corporation's ("Progress") managed file transfer application, MOVEit Transfer, which is used by companies across the country. Centralized before this Court are claims brought by consumers who were impacted by the data breach and who assert claims against Progress (the developer and licensor of MOVEit Transfer), and other downstream entities who used MOVEit Transfer, including Defendant National Student Clearinghouse ("NSC"). At an early procedural stage of this MDL, Co-Lead Counsel and the Settlement Committee successfully negotiated a $9.95 million class action settlement to resolve the claims asserted against one of the defendants, NSC, without jeopardizing the Settlement Class's[1] remaining claims against Progress. Although this Settlement does not resolve the claims asserted against all relevant defendants, it provides significant benefits to the Settlement Class Members. Namely, the Settlement will address the principal harms of the breach—the risk that cybercriminals will misuse their data, the time and effort spent mitigating that risk, and any documented losses caused by the security incident.

Pursuant to Rule 23(h), Class Counsel now respectfully seek an award of attorneys' fees and reimbursement of litigation expenses in a combined amount of $2,487,500.00 (one-fourth of the Settlement Fund). Given the degree of risk Class Counsel undertook and the beneficial result achieved for the Settlement Class, Class Counsel's request is well within the range of recoveries frequently awarded in common fund cases in this Circuit and reflects a reasonable combined attorneys' fee and expense award. For his help in prosecuting the claims asserted against NSC,

---

[1] Unless otherwise defined, capitalized terms are the same as those used in the Class Action Settlement Agreement and Release, ECF No. 1223-1.

Class Counsel further request that the Court award the Settlement Class Representative a service award of $5,000.00.

## **BACKGROUND**

### I.    **Factual Background.**

Plaintiff's claims against NSC arise out of a security incident stemming, in part, from a vulnerability in MOVEit Transfer. *See* Compl. ¶¶ 5, 9–10, 34.[2] MOVEit Transfer is a subscription-based managed file transfer application developed and licensed by Progress and used by numerous commercial and government entities, including NSC, to transfer large data files. *Id.* ¶¶ 2–3; ECF No. 908, ¶¶ 11–12. Between May 27, 2023 and May 31, 2023, CL0P Ransomware Gang exploited a vulnerability in the MOVEit Transfer application. *See Id.* ¶¶ 90–155. CL0P used the MOVEit vulnerability to escalate user privileges, gain unauthorized access to customers' MOVEit Transfer environments, and access, copy, and exfiltrate the sensitive information stored therein (the "Security Incident"). *See Id.* ¶¶ 96–153. Shortly after exploiting the MOVEit Transfer vulnerability, CL0P threatened to name and publish the leaked data of any organizations that did not respond to its ransom demands. *See Id.*, ¶¶ 175–179, 207–208.

NSC provides educational reporting and verification services to educational institutions, employers, and other organizations. *See* Compl. ¶ 32. In order to provide these services, NSC "collects data on student enrollment, academic progress, and educational outcomes to help educational institutions accomplish their missions." Compl. ¶ 15. NSC further stated that "our work – performed in a trusted, secure, and private environment – provides numerous time- and cost-savings benefits to students, schools, administrators, and requestors." *Id.*

---

[2] Citations to "Compl." are citations to Plaintiff's Complaint. *See Evangelista v. National Student Clearinghouse, et al.*, Case No. 1:23-cv-12993-ADB (D. Mass.), ECF No. 1.

In connection with providing these services, NSC may maintain individuals' information, including some Social Security numbers. *See* Compl. ¶¶ 32–33. Plaintiff and Settlement Class Members are current and/or former students whose information is used by NSC for performing services for institutions of higher education and other organizations. *See Id*. ¶ 32 (explaining NSC provides services on behalf of educational institutions, students, alumni, employers, and other organizations). NSC provided its services to these institutions and other organizations, as a result, maintained Plaintiff's and Settlement Class Members' Social Security numbers. *See Id*. ¶¶ 34, 37.

Although the Security Incident involved an exploit of the MOVEit Transfer application, Plaintiff alleges that NSC's negligence contributed to the breach and theft of Plaintiff's and Settlement Class Members' Social Security numbers. *See Id*. ¶¶ 57–59; ECF No. 908 ¶¶ 427–457. NSC denies these allegations and any fault or liability in this matter. Plaintiff further alleges that Progress should have warned users, including NSC, that MOVEit Transfer was "not set it and forget it" with respect to security, and that additional steps should have been taken to secure the data transferred with MOVEit Transfer. *Id*. ¶¶ 458–466. Plaintiff claims NSC could have prevented or mitigated the Security Incident by implementing reasonable data security measures to secure its MOVEit Transfer environment. *See* Compl. ¶¶ 51–53; 57–59; ECF No. 908 ¶¶ 427–431. NSC denies these allegations. Consequently, Plaintiff sued NSC and Progress for the harm caused by the theft of his highly personal and private information.

## II.    Summary of Class Counsel's Work.

This Court appointed Plaintiffs' Co-Lead Counsel, Liaison & Coordinating Counsel, and Committee Chairs on January 19, 2024. MDL Order No. 8 (ECF No. 649). In conjunction with MDL Order No. 8, the Court entered MDL Order No. 10 on March 28, 2024, empowering Co-Lead Counsel with various roles and responsibilities to efficiently manage the MDL. *See* MDL Order No. 10 (ECF No. 834). Pursuant to MDL Order No. 10, this Court vested Co-Lead Counsel

with the responsibility of "coordinating, overseeing and managing the litigation, settlement, and trials (if any) on behalf of the plaintiffs." MDL Order No. 10, ¶ A. Since their appointment, Co-Lead Counsel, Liaison & Coordinating Counsel, and the Committee Chairs have dedicated tremendous resources to prosecuting this MDL, including resolving the claims asserted against NSC. *See* Declaration of Gary F. Lynch ("Lynch Decl.") ¶¶ 6–17.

Following their appointment, Co-Lead Counsel and Liaison & Coordinating Counsel negotiated with counsel for all defendants regarding the orderly management of this MDL, resulting in MDL Order No. 13, which set deadlines for the parties to brief certain threshold issues relating to Article III standing, arbitration, and jurisdiction under the Class Action Fairness Act. MDL Order No. 13 (ECF No. 874); *see also* Lynch Decl. ¶ 7. In conjunction with MDL No. 13, MDL plaintiffs filed an Omnibus Set of Additional Pleading Facts on behalf of all MDL plaintiffs. ECF No. 908. After the entry of MDL Order No. 13, the parties continued to negotiate a proposed litigation structure for this MDL, resulting in the Court adopting a modified bellwether structure and the MDL plaintiffs filing a bellwether complaint against Progress and certain other defendants. MDL Order No. 17 (ECF No. 1123), ECF No. 1332.

## III.    Mediation and Subsequent Negotiations.

During the early procedural phase of this MDL, Co-Lead Counsel and the Settlement Committee, and counsel for NSC agreed to an early mediation of the claims asserted against NSC to attempt to resolve NSC's alleged liability for the Security Incident. *See* Lynch Decl. ¶ 11 Specifically, the Parties agreed to mediate with Hon. Diane M. Welsh (Ret.), who mediated several other cases in the *MOVEit* MDL. *Id.* ¶ 12. Prior to mediation, the Parties engaged in informal discovery, wherein NSC provided information about the Security Incident, including information concerning NSC's use of MOVEit Transfer, and the types of information impacted in the Security Incident. *Id.* ¶ 13. The Plaintiffs' Settlement Committee was therefore well informed regarding the

facts of the case, and the strengths and weaknesses of Plaintiff's claims and NSC's defenses leading into the mediation. *See id.*

On April 29, 2024, the Parties engaged in a full-day mediation with Judge Welsh. *See id.* ¶ 14. These good-faith and hard-fought negotiations resulted in an agreement in principle. *Id.* ¶ 14. Following the mediation, the Parties engaged in a series of further arm's-length discussions, during which the Parties negotiated, drafted, and finalized the terms of the Settlement Agreement. *Id.* ¶ 15. The Settlement Agreement was fully executed by the Parties as of August 26, 2024, and was preliminarily approved by this Court on October 11, 2024. *See* ECF No. 1266.

## ARGUMENT

### I.    Approving an Award of 25% of the Settlement Fund Is Reasonable and Appropriate.

It is well settled that attorneys who represent a class and whose efforts achieve a benefit for class members are entitled to "attorneys' fees and reimbursement of expenses prior to the distribution of the balance to the class." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 245 (D. Mass. 2022) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Rule 23 also permits a court to award "reasonable attorney's fees and nontaxable costs . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As courts recognize, the goal of an award of attorneys' fees is "to compensate plaintiffs' counsel fairly for the labor provided, taking into account the risks they faced during the representation." *Ranbaxy*, 630 F. Supp. 3d at 245.

In the First Circuit, district courts have broad discretion in awarding fees. *In re Thirteen Appeals Arising Out of San Juan*, 56 F.3d 295, 307 (1st Cir. 1995) ("[W]e hold that in a common fund case the district court, in the exercise of its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar."). Courts commonly find that a percentage of the fund calculation is the appropriate method for determining common fund fee

awards. *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 37 (D.N.H. 2006) ("The POF method has emerged in the last decade-plus as the preferred method of awarding fees in common fund cases. As the First Circuit has noted, the POF method has distinct advantages over the lodestar approach."); *In re Solodyn Antitrust Litig.*, No. 14-md-2503, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (using the percentage of the fund method); *In re Asacol Antitrust Litig.*, No. 15-cv-12730, 2017 WL 11475275, at *4 (D. Mass Dec. 7, 2017) (same). "The First Circuit has acknowledged the 'distinct advantages' of the POF method, explaining that it is less burdensome, enhances efficiency and better approximates the marketplace dynamics." *Ranbaxy*, 630 F. Supp. 3d at 245 (quoting *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d at 307). "The POF method is preferred in common fund cases because 'it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Cabletron Sys.*, 239 F.R.D. at 37 (citation omitted).

Here, Class Counsel specifically seek an award of one-fourth (25%) of the Settlement Fund. The combined fee and expense request of one-fourth of the Settlement Fund is reasonable under the percentage of the fund methodology. While no general rule exists, courts in this Circuit award percentages ranging from 20% at the low end (often for settlements exceeding $100 million), to 33% on the high end. *See Ranbaxy*, 630 F. Supp. 3d at 245 (collecting cases); *Kondash v. Citizens Bank, Nat'l Ass'n*, No. 18-CV-00288-WES-LDA, 2020 WL 7641785, at *6 (D.R.I. Dec. 23, 2020), *report and recommendation adopted*, No. CV 18-288 WES, 2021 WL 63409 (D.R.I. Jan. 7, 2021) (awarding 1/3 of a $1.8 million settlement fund in attorneys' fees); *In re Asacol*, 2017 WL 11475275, at *4 (awarding 1/3 of the settlement fund in attorneys' fees); *Gordan v. Massachusetts Mut. Life Ins. Co.*, No. 13-CV-30184-MAP, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (awarding 1/3 of a $30.9 million settlement fund in attorneys' fees); *In re Sovos*

*Compliance Data Sec. Incident Litig.*, No.1:23-CV-12100-AK (D. Mass. July 23, 2024) (ECF No. 51) (awarding 1/3 of a $3,534,128.50 million settlement fund in attorneys' fees and $13,825.99 in expenses); *In re MOVEit Customer Data Sec. Breach Litig.*, MDL No. 3083 (D. Mass. Apr. 3, 2025) (ECF No. 1432) (awarding 25% of the settlement fund in fees and expenses).

Class Counsel's combined fee and expense request of 25% of the Settlement Fund also falls squarely within the range of, if not below, awards that courts have granted in other data breach cases. *See In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *11 (S.D. Fla. Feb. 11, 2025) (awarding 1/3 of settlement fund in data breach settlement arising from breach of file transfer software, and $39,237.40 in reasonable litigation expenses); *In re Novant Health, Inc.*, No. 1:22-CV-697, 2024 WL 3028443, at *12 (M.D.N.C. June 17, 2024) (awarding 1/3 of the settlement fund in a data privacy settlement and awarding $18,134.70 in reasonable litigation expenses); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *7 (E.D. Wis. Mar. 22, 2023) (awarding 1/3 of settlement fund as attorneys' fees in a data breach settlement and awarding $13,453.57 in reasonable litigation expenses); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 17176495, at *6 (E.D. Va. Nov. 17, 2022) (awarding attorneys' fees equal to 28% of the common fund and $2,345,821.98 in reasonable litigation expenses); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 11299474, at *2 (N.D. Ga. Aug. 23, 2016) (awarding attorneys' fees equal to roughly 28% of the monetary benefit conferred to class in a data breach settlement and $166,925.19 in reasonable litigation expenses).

Accordingly, and as further demonstrated below, Class Counsel's fee and expense request of one-fourth of the Settlement Fund is reasonable under the percentage of the fund method.

## II.    Class Counsel's Undertaking, Effort, Expertise, Investment, and Result Merit a 25% Award Here.

The First Circuit has not prescribed a particular set of factors for assessing an application for attorneys' fees, and has instead allowed district courts to exercise their discretion in applying appropriate factors. Factors that district courts within this Circuit apply when analyzing a common fund request include: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (citation omitted); *see also In re Lupron Mktg. & Sales Practices Litig.*, No. MDL 1430, 01–CV–10861–RGS, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). A review of these factors demonstrates that Class Counsel's combined fee and expense request is reasonable.

### A.    The Size and Nature of the Fund Created and the Number of Persons Benefitted.

Here the Settlement provides for the creation of a $9.95 million Settlement Fund for the benefit of approximately 1.5 million Settlement Class Members. This compares favorably to other data breach settlements that have received final approval. *See*, *e.g.*, *In re Fortra*, 2025 WL 457896, at *14 (final approval granted to $7.5 million settlement fund that would benefit more than approximately one million class members); *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-CV-01472-AAS, 2024 WL 3104286, at *3 (M.D. Fla. June 24, 2024) (final approval granted to $7.5 million settlement fund that would benefit approximately 2.9 million class members); *Sherwood, et al. v. Horizon Actuarial Services LLC*, No. 1:22-cv-01495 (N.D. Ga. Apr. 2, 2024)

(ECF No. 94) (final approval to $8.73 million settlement fund that would benefit approximately 1.3 million class members).

Further, the Settlement is designed to provide relief for the harms and potential harms caused by the Security Incident—time and expenses spent responding to the breach, reimbursement for any actual misuse of data, and measures to prevent the future risk that the stolen data will be used for fraud or identity theft. The Settlement provides relief for these data breach injuries by enabling Settlement Class Members to file claims for benefits, including: (1) reimbursement of ordinary out-of-pocket losses (including lost time spent responding to the Security Incident) due to the misuse of data or efforts to prevent the misuse of data; (2) reimbursement of extraordinary losses resulting from the misuse of data; (3) an alternative cash payment; and (4) two years of credit monitoring services. The Settlement's benefits are therefore comparable to and, in some cases more valuable than, those provided by other data breach settlements. *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *2 (N.D. Cal. Jan. 16, 2024) (granting final approval to data breach settlement that provided credit monitoring, a cash payment, or a documented loss payment); *In re Forefront*, 2023 WL 6215366, at *2 (granting final approval to data breach settlement that provided credit monitoring, and reimbursement for documented losses and lost time); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services).

In addition to these monetary benefits, the Settlement provides for meaningful injunctive relief aimed at preventing further similar security incidents from occurring as NSC has agreed to implement certain business practices changes, including conducting due diligence of third parties

that provide file transfer services to NSC. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *33 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) (settlement fund did not recognize the full value of the settlement where defendant agree to implement certain business practice changes following a data breach); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016) (recognizing two years of enhanced cybersecurity measures was a valuable class benefit).

Class Counsel's success in securing these benefits that address the current and potential future harm resulting from the Security Incident weighs heavily in favor of awarding the requested attorneys' fee award.

**B.    The Risks of Litigation Support the Requested Fee.**

Courts recognize the risk assumed by an attorney as a key factor in determining an appropriate fee. *See In re Lupron*, 2005 WL 2006833, at *4 ("Many cases recognize that the risk assumed by an attorney is perhaps the foremost' factor in determining an appropriate fee award."). In data breach cases, recovery is hardly a foregone conclusion, as Plaintiff would likely have faced hotly contested issues of causation and damages had litigation continued. *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped. It would present the parties and the Court with novel questions of law."). Further, Class Counsel undertook this action on an entirely contingent fee basis, shouldering the risk that this litigation would yield no recovery and leave them wholly uncompensated for their time, as well as for their out-of-pocket expenses. Lynch Decl. ¶ 6. To date, neither Co-Lead Counsel, Liaison & Coordinating Counsel, or the Committee Chairs have been paid anything for their efforts. As such, a dispositive ruling at any stage of this ligation could have meant a zero recovery for members of the Settlement Class, as

well as non-payment for Class Counsel. Class Counsel's success in achieving a substantial and certain recovery under these circumstances demonstrates the reasonableness of the request fee.

### C.    The Complexity of this Litigation Supports the Requested Fee.

The complexity of this MDL and its underlying cases weigh heavily in favor of the requested fee award. The NSC Settlement resolves just one piece of the complex puzzle of related litigation arising out of the MOVEit data breach. Here, if the Parties chose to proceed to litigation, NSC would have likely argued that it owed no duty to Plaintiff and the Settlement Class because it lacked a direct relationship with them. NSC provided educational reporting services, aggregating Plaintiff's and Settlement Class Members' information for institutions of higher education and other institutions. Had litigation proceeded, NSC would have likely argued that the lack of direct relationship impacts NSC's duty to the Settlement Class or the apportionment of duty between Progress and NCS, which, if successful, could have impacted Plaintiff's and the Settlement Class's ability to recover from NSC. While Class Counsel believe they would have prevailed, risk is inherent in all litigation.

Further, plaintiffs face risks inherent in all data breach actions. Plaintiff would need to prevail on both issues of both liability and class certification to ensure his claims went forward on a classwide basis and to afford an opportunity for the Settlement Class to obtain any relief. *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."). Both parties would likely face significant risks and costs from the dispute over whether NSC's data security was unreasonable and negligent and competing expert testimony regarding the viability of any classwide damages models. *See e.g.*, *In re Yahoo!*, 2020 WL 4212811, at *9 (listing "more discovery" as one of the significant expenses for continuing a data breach litigation); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (noting that,

absent settlement, plaintiffs' challenges would include "significant and expensive additional discovery" and "hiring more experts and opposing the defendants' experts").

In short, this was not a simple case with a clear path to liability and judgment, and this litigation could have proceeded for several years, including through appeals, had the Parties not reached this agreement. Ultimately, Class Counsel worked diligently to achieve a significant result for the Settlement Class in the face of very real litigation risks. Accordingly, this factor supports the reasonableness of the requested fee award.

### D.    The Experience, Skill, and Efficiency of the Attorneys Involved Supports the Request.

Here, Class Counsel appointed by the Court are experienced class action attorneys with significant experience litigating data breach actions specifically. ECF No. 1223, ¶¶ 3–5, 41. Courts have recognized Co-Lead Counsel's experience in this area of law and have repeatedly adjudged Co-Lead Counsel adequate under Rules 23(a)(4) and 23(g). *Id.* Class Counsel have demonstrated through this litigation that they are well-versed in data breach and privacy law, and have prosecuted this case and others in the MDL with vigor and commitment. Utilizing their combined skill and experience, Class Counsel were able to negotiate a settlement with NSC, securing guaranteed compensation for the Settlement Class, while also allowing for continued litigation against Progress. As such, this factor supports the reasonableness of the requested fee and expense award.

### E.    The Request is Reasonable When Compared to Awards in Similar Cases.

As demonstrated above in Argument, *supra* § I, the request of one-fourth of the Settlement Fund to cover the time and out-of-pocket expenses of Class Counsel is well within the range of reasonable fees awarded in this Circuit and in other data breach cases. Accordingly, this factor supports the reasonableness of the requested fee.

**F.        Public Policy Considerations Support the Requested Fee.**

The requested fee supports public policy goals. Class actions like this one are necessary and vital to deter companies from adopting laissez-faire security measures that continue to put consumers at risk. In 2023,there were over 3,000 data compromises in the United States, which impacted over 353,027,892 individuals.[3] Also in 2023, the Federal Trade Commission received more than 1 million complaints of identity theft and 2.6 million complaints of related fraud, resulting in total financial losses that exceed $10 billion.[4]

Given the approximately 1.5 million Settlement Class Members impacted by the Security Incident, and the relatively small or difficult-to-quantify amounts of individual damages, pursuing claims on an individual basis would have been economically and judicially inefficient. Absent the class action vehicle, these consumers most likely would have no recovery. *See In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 463 (D.P.R. 2011), ("Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent."); *Mazola v. May Dep't Stores Co.*, No. 97-cv-10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) (class actions "give[] voice to relatively small claimants who may not be aware of statutory violations or have an avenue to relief . . . the only way in which to make such actions economically feasible is to award [attorneys' fees.]"). This litigation is important and critical to ensure that consumers are compensated for their harm and hold companies accountable for their failure to protect individuals' sensitive personal information.

---

[3] Taelor Sutherland, *Data breaches increased throughout 2023*, Security (May 8, 2024), https://www.securitymagazine.com/articles/100638-data-breaches-increased-throughout-2023.

[4] Jim Akin, U.*S. Fraud and Identity Theft Losses Topped $10 Billion in 2023*, Experian (July 25, 2024), https://www.experian.com/blogs/ask-experian/identity-theft-statistics/#:~:text=The%20 U.S.%20Federal%20Trade%20Commission,%25%2C%20to%201%2C036%2C961%20from%2 01%2C107%2C053.

**III.    Settlement Class Counsel's Request for Reimbursement of Expenses Is Reasonable.**

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *20 (D. Mass. Jan. 8, 2015) (citation omitted). In combination with their fee request, Class Counsel seek reimbursement for the reasonable expenses incurred to advance this litigation. Lynch Decl. ¶ 23. Class Counsel and the attorneys working with them have documented their expenses by category, in the accompanying declaration. *Id.* The schedule of expenses shows that counsel has litigated the case efficiently, with no unreasonable or unjustified expenditures. *Id.* ¶ 24. Moreover, these expenditures were of the type typically charged to hourly paying clients. *Id.*

As explained in the Lynch Declaration, a significant percentage of the expenses incurred were the result of mediation and associated travel costs. *Id.* ¶ 23. Such categories of expenses are commonly reimbursed in common fund cases. *See Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (approving expenses related to mediation, travel, filing fees, and postage); *In re Wilmington Tr. Sec. Litig.*, No. 10-cv-0990-ER, 2018 WL 6046452, at *10 (D. Del. Nov. 19, 2018) (approving expenses related to management of documents, expert fees, computerized research, photocopying, transcripts, postage, travel, and discovery expenses). In sum, all of Class Counsel's expenses, in an aggregate amount of $20,400.21 are typical in litigation, were necessary to the successful prosecution and resolution of the claims against NSC, and Plaintiff's requests for Class Counsel's reasonable litigation expenses should be approved.

**IV.    The Service Award Requested Is Reasonable.**

Class Counsel request that this Court approve the payment of a modest service award of $5,000.00 to the Settlement Class Representative. A Service Award for bringing and litigating this case on behalf of the Settlement Class is permissible and promotes a public policy of encouraging

14

individuals to undertake the responsibility of representative lawsuits. *See* Manual for Complex Litigation, § 21.62, at n. 971 (4th ed. 2004) (citing *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990)); *In re Lupron*, 2005 WL 2006833, at *7 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.") (citation omitted). Courts routinely approve service awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d at 468.

Plaintiff has been closely involved with the NSC action from the beginning. His efforts were instrumental in providing the necessary background information and documents that make this case possible. Lynch Decl. ¶¶ 25–26. His desire and willingness to seek relief for others similarly situated helped create the benefits all Settlement Class Members will enjoy here. A service award of $5,000.00 to the Settlement Class Representative is reasonable and falls within the range of awards approved in other privacy class actions. *Feldman v. Star Trib. Media Co. LLC*, No. 22-CV-1731 (ECT/TNL), 2024 WL 3026556, at *8 (D. Minn. June 17, 2024) (service award of $5,000.00 in a data privacy case was reasonable); *Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *4 (C.D. Cal. Dec. 9, 2021) (in data breach, case awarding $5,000.00 service awards to each of the two settlement class representatives); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 572, 592 (N.D. Cal. 2015) ($5,000.00 service award where plaintiff "did not need to respond to any discovery" and "was not deposed").

## <u>CONCLUSION</u>

For the above-mentioned reasons, Plaintiff respectfully requests that in conjunction with his forthcoming motion for final approval, the Court grant this motion and approve a combined award of $2,487,500.00 for attorneys' fees and reimbursement of reasonable litigation expenses, and a Service Award in the amount of $5,000.00.

DATED: April 4, 2025                Respectfully submitted,

                                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                    By: */s/ Kristen A. Johnson*
                                    Kristen A. Johnson (BBO# 667261)
                                    1 Faneuil Hall Square, 5th Floor
                                    Boston, MA 02109
                                    Tel: (617) 482-3700
                                    Fax: (617) 482-3003
                                    kristenj@hbsslaw.com

                                    *Plaintiffs' Liaison & Coordinating Counsel*

                                    By: */s/ E. Michelle Drake*
                                    E. Michelle Drake
                                    BERGER MONTAGUE, PC
                                    1229 Tyler Street, NE, Suite 205
                                    Minneapolis, MN 55413
                                    Tel: (612) 594-5933
                                    Fax: (612) 584-4470
                                    emdrake@bm.net

                                    By: */s/ Gary F. Lynch*
                                    Gary F. Lynch
                                    LYNCH CARPENTER, LLP
                                    1133 Penn Avenue, 5th Floor
                                    Pittsburgh, PA 15222
                                    Tel: (412) 322-9243
                                    Fax: (412) 231-0246
                                    Gary@lcllp.com

By: */s/ Douglas J. McNamara*
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Tel: (202) 408-4600
dmcnamara@cohenmilstein.com

By: */s/ Karen H. Riebel*
Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 612-339-0981
khriebel@locklaw.com

By: */s/ Charles E. Schaffer*
Charles E. Schaffer
Austin B. Cohen
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com
acohen@lfsblaw.com

*Plaintiffs' Lead Counsel*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.


Dated: April 4, 2025                           */s/ Kristen A. Johnson*
                                               Kristen A. Johnson (BBO# 667261)